## John Berg, Jr., et al., Plffs. in Err., *v.* Julia McLafferty et al.

In an action of ejectment, where a witness is not a party to the suit and makes no claim to any of the land involved and has no interest in the result of the case, the fact that he is interested as the owner of neighboring land in the question involved in the case, is not a disqualifying interest so as to render him incompetent.

Where a person would be competent as a witness if living, the fact of his death does not render incompetent his testimony taken on a former trial.

NOTE.—The interest which disqualifies is in the event of the suit, and not merely in the question. Dickson v. McGraw Bros. 151 Pa. 98, 24 Atl. 1043; Lancaster County Nat. Bank v. Henning, 171 Pa. 399, 33 Atl. 335; Lazarus's Estate, 142 Pa. 104, 21 Atl. 792; Tarr v. Robinson, 158 Pa. 60, 27 Atl. 859.

In an action of ejectment brought by the defendants in an execution, it appeared that the original note on which judgment was entered was lost, and not among the records, but that the writ was indorsed "waiver of inquisition." The court was requested to charge that if the jury found that the fund from the sale had been distributed without objection by the defendants; that the defendants had placed a deed in the line of title on record on the day before the day of sale; that they had removed from the land without writ of possession, and peaceable entry had been taken by the purchaser and acquiesced in by the defendants, the defendants are estopped from alleging want of waiver of inquisition, if there be no waiver, and the sale on the vend. ex. passed title. *Held*, that it was error to refuse the request absolutely.

(Argued October 14, 1887.   Decided January 3, 1888.)

October Term, 1887, No. 204, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to the Common Pleas of Butler County to review a judgment in favor of the plaintiffs in an action of ejectment.   Reversed.

Ejectment by Daniel McLafferty, John McLafferty, Grace McLafferty, James L. Dougan, Sarah A. Dougan, and Hannah J. Dougan, against John Berg, John Berg, Jr., W. Weckerly, and George Gerhart, partners as John Berg and Company, to recover two pieces of land in the possession of the defendants.

The facts of the case as they appeared at the trial before HAZEN, P. J., are as follows:

In 1848 John McLafferty was the owner, without a patent, of 200 acres of land, a part of which was the land in controversy. McLafferty died intestate in 1848, leaving children, Edward, James, Ann, Dugan, Bridget, Sarah, and Mary, all of age. About 1840, James, with the assistance of his father, built a house on the east end of the land and moved into it and continued to occupy it until his death in 1878.   After the death of John McLafferty, Edward resided in the homestead dwelling with his mother and two unmarried sisters, and continued the farming in common with James.

In January, 1857, James and Edward bought 53 acres from a neighbor named Speer.   Part of this they subsequently conveyed away.   In 1868 or 1870 James and Edward caused a division line to be run dividing the land into two portions.   James reserved the two pieces of land now in dispute, one containing 30 acres of the lands of John McLafferty, the other partly of

the same lands and partly of the Speer lands and containing 90
acres. James McLafferty had acquired a patent from the com-
monwealth for all the old tract; and on October 19, 1870, he
executed a deed to Edward McLafferty for the western division
of the land citing it by courses and giving other land of James
McLafferty on the east, and reciting title through James McLaf-
ferty by patent.

About the time of the Speer purchase in 1857 a judgment was
entered by Speer against James and Edward and was kept re-
vived until the division was made, when it was dropped as to
Edward and continued as to James and his heirs. The original
note or bond on which the judgment was entered was not to be
found among the records, but the fi. fa. which was issued in
1880 contained the memorandum on the back: "The right of in-
quisition and exemption laws waived and condemnation assented
to."

A vend. ex. subsequently issued and the share of James was
sold to Berg & Company. In 1876 Wm. Denny bought at sher-
iff's sale Edward McLafferty's share of the land. In 1866,
Mary McLafferty died, leaving by will her interest in the land
to Edward and Sarah. On January 21, 1880, Edward and
Sarah conveyed all their interest in the John McLafferty tract
to Daniel McLafferty, a son of James. James McLafferty left
three children, Daniel, John, and Grace. Ann McLafferty mar-
ried one Dougan, and died, leaving three children, James, Sarah
A., and Hannah J. The plaintiffs claim all the interest of Ann,
Mary, Edward, Sarah, and James in the land of John whatever
it might be and also claimed the interest of Edward and James
in the Speer tract.

At the trial Wm. Denny was offered as a witness for the de-
fendants, and asked the following questions:

*Q.* Did you know the time this property was up for sale by
the sheriff referred to here, in 1880, March?

*A.* Yes, sir.

*Q.* Were you here at that time?

*A.* I think not in March.

*Q.* Do you remember of seeing, of meeting Daniel McLaf-
ferty here—

Objected to by plaintiffs.

Offered as part of the evidence to follow the offer of the records yesterday, to prove by the witness that he was present at the time that this property was advertised for sale by the sheriff; was interested; was a bidder; that just before the sale he had a conversation with Daniel McLafferty in which a deed in the line of this title, to wit: the deed of Wm. L. Speer to James and Edward McLafferty, was referred to as not being of record. As the result of the conversation Daniel McLafferty went home, brought up that deed and had it placed upon record before the sale, for the purpose of enhancing the value and realizing more money at that sale. This as part of the facts on which we rely as an estoppel; that he was present and did afterwards bid more than he did before this deed was placed on record, and to show that Daniel McLafferty himself was present at the time of the sheriff's sale.

Objected to by the plaintiffs: first, because the facts offered to be proved were not brought to the attention of the purchaser at sheriff's sale; no offer to show that he had any knowledge of them, or that they influenced him in the slightest degree. The competency of the witness William Denny is objected to, because James and Daniel McLafferty, the parties referred to a moment ago, and Edward McLafferty, are all dead. Wm. Denny and his two brothers Daniel and John, are the owners by virtue of the sheriff's deed dated in 1876 of all the title and interest of Edward McLafferty, in and to that part of the John McLafferty tract lying west of the division line between James and Edward on the old McLafferty farm the witness was called and will be asked to establish. He is, therefore, incompetent to testify in this suit to matters which occurred in the lifetime of either James, Edward, or Daniel, which in effect would be to increase his interest in the land acquired through Edward by showing that he and his brothers acquired thereby the title of James and Sarah Ann Dougan to the land he now owns. The witness and his brothers claim to be, and are, the owners of Edward's interest in the west end of the farm; and if his testimony would be permitted to show a division line, or parol partition, his interest would be increased to the extent of James's interest in it, Sarah's interest in it, and all of the parties who are affected and bound by the partition proposed to be proven. He is, therefore, if not interested in the result, interested in the question.

Defendants' counsel replies that the witness had no interest

in the result of this suit, and admits that William Denny and his two brothers, Daniel and John, are the owners of the west. end of the old John McLafferty farm by virtue of the deed of Edward's by the sheriff, none of which is described in the præcipe, and marked off by lines alleged to have been made in 1868 or thereabouts; that the title which Edward McLafferty had to this west end passed by the sheriff's deed to the witness and others, was held by Edward by virtue of the deed from James McLafferty to Edward in 1870, and that no part of the land in which the witness has or had an interest is involved in this case, the land in dispute being exclusive of that described in the sheriff's deed referred to.

The witness: John is also interested in this land; this west end. There were three of us together.

*Q.* (By plaintiffs' counsel.)   You and Daniel and John are the owners of the land?

*A.* Yes, sir.

Plaintiffs' counsel admits that the title is in Daniel Denny, but that John and William are interested in it also.

Plaintiffs' counsel objects further, that since the bringing of this suit an action of ejectment has been brought and is now pending, against William Denny and others for the land described as the west end of this tract, and bounded by the alleged line run at the parol partition, and that William Denny has appeared in court and is defendant, on the ground that there was a partition made that he is called upon to prove.

By the Court: "Objection sustained.   We let it go to his competency to testify to things occurring in the life of the parties." [1]

Defendants' counsel next offered to confine the testimony of the witness to matters occurring since the death of James Mc- Lafferty, but in the lifetime of Daniel Mc Lafferty.

By plaintiff's counsel: The interest, whatever it was, of James McLafferty in the land in dispute, having, upon his death in 1878, devolved upon his heirs, among whom was Daniel Mc- Lafferty, and he having died in 1884, and his interest therein having devolved upon his heirs, the present plaintiffs, the witness is, by virtue of the rule just enforced in the former offer, incompetent to testify, to the prejudice of the plaintiffs or adverse to their interest, to any matters which took place before the death of their ancestor, Daniel, in 1884, but he is competent

so far as Daniel is concerned to testify to any matters which have occurred since his death, and to that part of his testimony no objection is made.

By the Court: "Objection sustained." [2]

Defendants' counsel then proposed to show by the witness: First, that he had no interest in the land in dispute whatever, and never had; never claimed any; nor in the result of this suit; second, to show by him that he was present at a parol partition or division of this land made in about 1868 between James and Edward McLafferty; was present at the request of one or both of the parties; saw the line run upon the ground, and possession held by them corresponding to that line thereafter, at a time when the witness was not interested and had not become interested in another part of the old McLafferty tract, which partition was assented to or acquiesced in by Sarah McLafferty—this, for the purpose of showing that parol title passed to the plaintiffs or any of them by virtue of the deed offered in evidence by the plaintiff, from Edward and Sarah McLafferty to Daniel McLafferty.

Objected to by plaintiffs' counsel, it having been admitted that the witness is interested in the title of the west end of this John McLafferty tract, the value of which and the *quantum* of interest therein depends solely, as far as this offer is concerned, upon establishing by his testimony a parol division and line run in 1868, between Jas. McLafferty and Edward McLafferty, the witness's vendor, by virtue of which parol division or partition the witness's title became absolute in severalty to the entire west end, if the parol division and line can be, by his testimony, established to the satisfaction of the court and jury. He is therefore disqualified, as the parties interested would be affected thereby, having acquired their title by devolution upon the death of their ancestors.

By defendants' counsel: The title of Edward McLafferty now held by the witness and others, in the west end of the McLafferty tract, not now in dispute, or involved in this issue, rested, not upon the parol division referred to, but upon the deed made by James McLafferty and wife, to Edward McLafferty in 1870; and whatever interest or estate the witness and his brothers have in this west end, is that which passed by the deed of Jas. McLafferty referred to.

By plaintiffs' counsel: The *quantum* of interest which James

could or did convey in 1870, whether a mere friend's interest or a proven title, depended upon the fact whether or not he had acquired title to the entire east end, by virtue of the partition the witness is offered to prove.

By the Court: "Objection sustained." [3]

Defendants' counsel next offers to prove by the same witness that James McLafferty, now deceased, entered into actual possession of the land in dispute about the year 1841, caused a house to be erected thereon, moved into it with himself and family, afterwards erected a barn, cleared, fenced, planted orchards, and improved it, claiming it as his own, receiving the rents and profits exclusively from that time, and continuing from 1841 until the time of his death in the continuous, peaceable, uninterrupted possession and occupation of the property, adverse to all until the time of his death in 1878—this for the purpose of showing that he had acquired title under the statute of limitations, and that an ouster, not actually shown, ought to be inferred by the jury from this state of facts, and to show that his possession was adverse and hostile to the world, and that the witness is not interested in the land in controversy and never was.

Objected to by the plaintiffs. The competency and relevancy of the testimony in the abstract is conceded; but the competency of the witness is objected to for the reason stated in the former objections.

By the Court: "Objection sustained." [4]

Plaintiffs' counsel next offered the testimony of Edward McLafferty, taken on the former trial of this case in rebuttal, Edward having died since his testimony was taken.

Objected to by the defense, because Edward McLafferty was a party to the parol division and partition referred to by witnesses, and that the parties plaintiff now stand in his room and stead, and that the other party to that parol division, James McLafferty, under whom we claim, died in 1878, and Edward McLafferty being present would therefore be incompetent as a witness.

Plaintiffs' counsel replied: It is already in evidence that all the interest of Edward McLafferty, and all his title and claim was devested by the sheriff's sale in 1876, and vested in William Denny, indorsed to himself and his brothers Daniel and John. At the time Edward testified he was neither a party to the record nor interested in the question or the result, and was therefore

in every sense competent to testify, and (having died since his testimony was taken) he was competent to testify at the time it was taken; in addition to that it is also in evidence that he released, by a quitclaim deed, for a consideration of $1, to Daniel Denny, all of his interest or possible interest in the land in dispute in 1880; so that under any view, and without the acts of 1869 and those since, Edward McLafferty was a competent witness at that time, and being dead his testimony is now competent.

By the Court: "Objection overruled." [5]

Col. Thompson, a witness for plaintiffs, was asked this question:

*Q.* Did you act as counsel for the administrator?

*A.* Yes, sir.

*Q.* State, when this judgment on which this sale occurred was confessed, or the different persons named as children and heirs of James McLafferty, deceased, whether you had any special employment, or any authority, or whether any of them spoke to you in reference to that, or authorized you.

Defendants' counsel: We will have to object to this until we know the purpose.

Plaintiffs' counsel: This is for the purpose of showing that Grace McLafferty, John McLafferty, and Edward McLafferty, the children and heirs of James McLafferty, did not employ counsel nor authorize the confession of judgment in this case— to be followed up by proof that they were not present at the sale; that they participated in it in no way; that they did not consent to it; that they received no part of the proceeds and authorized no one to receive any for them; for the purpose of rebutting the allegation of acts on the part of those persons on which an estoppel is to be based.

Objected to: first, because it is not rebuttal—the main part of the offer; and second, it is not competent to contradict a record of the court which seems to be the purpose of it and can be its only purpose. It is further objected to as being incompetent for any purpose, because it could not affect the rights of a purchaser at sheriff's sale, who was bound by what the record of the court showed; and that cannot be changed or contradicted now so as to affect him.

By the Court: "Objection overruled." [6]

The defendants offered, *inter alia*, the following points:

8. If the jury believe and find from the evidence that the fund arising from the sale of the land in dispute was distributed by decree of court, after due proceedings of law, to the creditors of James McLafferty, deceased, and was paid out without objection from the defendants in the execution; that part of it was appropriated to the payment of fees of the attorney for said estate and the heirs of the said James McLafferty; that objection was made to the application for a stay of the writ for the sale of said land by the sheriff, on other grounds than that of a want of waiver; that the deed was placed on record the day before the sale, to wit: the deed for the Speer tract to James and Edward McLafferty, most of which was embraced in the levy, and that the defendants in the writ removed from said land without writ of possession or other process commanding them to surrender possession, and peaceable possession taken by the purchaser and acquiesced in by the defendants in the writ for a long time prior thereto, they and those claiming under them are estopped from alleging want of waiver of inquisition, if there be no waiver; and the sale being made on the vend. ex. passed title to the defendants here, the purchasers at the sheriff's sale.

*Ans.* "Refused." [7]

10. If under the testimony of Edward McLafferty offered by the plaintiffs as well as the evidence offered by defendants showing that, by the parol division between Edward and James, the balance of the Speer purchase fell to James McLafferty and thereby vested in him, the plaintiffs cannot recover for it in this case.

*Ans.* "Refused." [8]

The plaintiffs presented, *inter alia,* the following points:

3. If James and Edward attempt to set up the statute against their sisters, they must rebut the legal presumption that they held for the benefit of all, by express proof that the holding was not in hostility to them.

*Ans.* "Affirmed." [9]

4. The statute of limitations did not begin to run against their sisters until the commission of some notorious, hostile act, inconsistent with the rights of their sisters.

*Ans.* "Affirmed." [10]

5. There is no sufficient evidence of the waiver of inquisition

by writing filed, or otherwise; and the sale by the sheriff passed no title.

*Ans.* "Affirmed." [11]

8. To constitute an estoppel the jury must find that the plaintiffs connived at or consented to a sale of the land, surrendering possession thereof to the purchaser voluntarily; consented to the appropriation of the proceeds to the judgment of their ancestor, and mere non-action on their part of the distribution of the money by the law will not work an estoppel.

*Ans.* "Affirmed." [12]

13. The alleged partition by James and Edward bound none of the other heirs, unless they were present or authorized it to be done, or afterwards consented thereto and ratified it.

*Ans.* "Affirmed." [13]

14. The testimony on the part of the defendants, even if true, is not sufficient to supply the want of the waiver of inquisition, nor to estop the plaintiffs from setting it up in this suit, though want of inquisition, and the verdict must be for the plaintiffs for all the land described in the writ.

*Ans.* "Refused." [14]

15. That the receipt of $75 on the auditors' report by Col. Thompson, cannot operate as an estoppel against Daniel, Grace, and John, unless they received the money or a portion of it from Col. Thompson, and knew that he received it, or were affected by it—or ratified and confirmed the receipt of it by him.

*Ans.* "Affirmed." [15]

16. If the jury find that the sale was made without inquisition or waiver thereof, and that the plaintiffs are not estopped by anything done or omitted to be done by them, from setting up the want of inquisition, then in that event the question of the statute of limitations does not arise; and the verdict must be for the plaintiffs for all the land described in the writ.

*Ans.* "Affirmed." [16]

Verdict and judgment for plaintiffs.

The assignments of error specified: (1–6) The rulings on the evidence; and (7-16) the answers to the defendants' and plaintiffs' points as above.

*Lev. McQuistion* and *W. D. Brandon,* for plaintiffs in error.—To exclude the testimony of a witness on the ground of

interest he must have had some legal, certain, and immediate
pecuniary interest in the result of the issue. In this case Wm.
Denny certainly had no pecuniary interest. Bennett v. Heth-
ington, 16 Serg. & R. 195.

The court erred in refusing our eighth point as contained in
the seventh assignment of error. Berg. v. McClafferty, 1 Sad.
Rep. 286.

It was the duty of the defendants in error who had full
knowledge of the sheriff's sale to object in a reasonable time.
They knew that the property was advertised for sale at March
court, 1880, when Daniel McLafferty had the writ stayed on his
own application, on grounds other than the want of waiver or
condemnation. They encouraged bidders by placing the Speer
deed on record for part of the land sold the day before the
sheriff's sale in June, 1880. They saw John Berg & Com-
pany's bid appropriated to the debts of James McLafferty, by
the auditor.

*Chas. McCandless* and *Thompson & Son,* for defendants in
error.—Wm. Denny is interested in maintaining and proving
the parol partition of this tract of land and is therefore in-
competent. Karns v. Tanner, 66 Pa. 302; Arthurs v. King,
84 Pa. 530.

The case is narrowed down to a question of estoppel, and all
the facts alleged to sustain it are presented in the eighth point of
the plaintiff in error. It asks the court to say that if the pro-
ceeds of the sheriff's sale were distributed by decree of the court,
and part thereof appropriated to the attorney, John M. Thomp-
son, it would raise an estoppel. This court has said a score of
times that the distribution of a fund like this is not the act of
the debtor, a fact none the less because it is the law as well.
The court and not the debtor controlled the fund, and it would
seem unreasonable to visit the debtor with adverse results, based
wholly upon the action of the court, which he could neither pre-
vent nor modify. Equity is not found seeking for a pretext to
rob the debtor, by showing the acts of a court, independent of
the debtor and everybody else. Gardner v. Sisk, 54 Pa. 507.

OPINION BY MR. JUSTICE GREEN:

We cannot understand upon what principle William Denny
was rejected as a witness. He was not a party to the suit and

not liable for costs.    He made no claim of title to any of the land for which this action was brought.    He had no interest in the result of the case as he could not use the verdict and judgment in any litigation he might have for other land whether with these or other parties.    He was clearly competent, as the law was prior to the act of 1869, and of course he could not be disqualified by that act.    An interest in the question involved in the present case is not a disqualifying interest, and we have no doubt of his competency.    The first four assignments of error are, therefore, sustained.

The fifth assignment is not sustained.    It is practically conceded that Edward McLafferty would be competent if he were living; and the fact of his death certainly does not render incompetent his testimony taken on a former trial.

The sixth assignment is not sustained.    The testimony offered was simply to rebut the supposed effect of Mr. Thompson's acts, done apparently as counsel for the widow and heirs. As these acts were competent evidence in favor of the defendants it was of course competent to explain them or reply to them by way of contradiction.

The seventh assignment is sustained.    The eighth point of the defendants should not have been refused absolutely.    The facts stated in the point were such as tended to establish an estoppel, and, if believed by the jury, might suffice to warrant them in inferring an estoppel if there were no other facts in the case which avoided their effect.    The point should not have been framed with the conclusion of an absolute estoppel from the facts stated, and therefore need not have been, and perhaps should not have been, affirmed without qualification.    At the same time it should not have been refused peremptorily.    In point of fact the court left the facts to the jury upon this whole subject correctly in substance as we think; and there is an inconsistency between that submission and the absolute refusal of the point.

The eighth, ninth, and tenth assignments are not sustained. The eleventh is sustained because the unqualified affirmance of the fifth point of the plaintiffs is a binding instruction to the jury that the sheriff's sale to the defendants passed no title. Such an answer is inconsistent with the general charge which does leave to the jury the facts on the subject of estoppel.    If the sheriff's sale passed no title the defendants had no defense.

The plaintiffs' eighth point is too narrowly drawn, since there may be other facts beyond those stated in the point which might amount to an estoppel; but as those are the chief facts relied upon by the defendants for that purpose, we must suppose that that point was affirmed as it stood, because they constituted the main subject of contention; and in that view the affirmance was substantially correct.

The thirteenth assignment has no merit, and the fourteenth is a clear mistake, since the plaintiffs' fourteenth point was refused and not affirmed. The remaining assignments are not sustained.

Judgment reversed and *venire de novo* awarded.